# THOMAS D. CHRISTENSEN v. NORTHERN STATES POWER COMPANY OF WISCONSIN.[1]

November 29, 1946.

No. 34,265.

*Thomas Mohn,* for appellant.
*Fred N. Peterson,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from an order denying an alternative motion for a judgment notwithstanding the verdict or for a new trial.

Plaintiff was engaged in the business of raising, propagating, and selling minnows and rough fish. For that purpose, he testified

[1]Reported in 25 N. W. (2d) 659.

that he had leased from the owners the land under and the shore rights around Lake Andrew in Goodhue county. The lake is about one-half to three-quarters of a mile long, 800 to 1,000 feet wide, and varies in depth from 15 to 18 feet. There is no evidence in the record that it is a meandered lake. There is no stream running into it. It is fed by springs. There is no longer an outlet on the surface, the small outlet having been obstructed by erosion. By a license from the state each year from 1941 through 1944, plaintiff had been permitted to propagate minnows and rough fish and to sell them. The 1945 season for selling minnows or other rough fish such as were in the lake had not opened, and plaintiff had not renewed his license for 1945 when his alleged cause of action accrued.

Defendant had a high line carrying 66,000 volts which crossed the lake on a tower anchored in the lake. On March 15, 1945, the ice surrounding the tower had created such pressure on it that the tower started to tip over. Employes of defendant dynamited the ice in two places in an endeavor to correct the position of the tower. However, the tower tipped, and the electric current was shorted into the tower for four seconds.

Plaintiff claims that the explosions and the electric current killed all the rough fish and minnows in the lake. Defendant denies that plaintiff had any right, title, or interest in said fish, on the theory that his license had expired and that consequently he had at that time no right to propagate and sell them. It further claims that it was free from any negligence in maintaining and operating its electrical equipment or in conducting its blasting operation. The case was tried before a jury, and a verdict for $1,910 was returned for plaintiff.

Defendant makes numerous assignments of error, all of which can be disposed of by determining whether the evidence is sufficient to support the verdict.

The real question presented for decision is whether there is sufficient evidence that either the electrical current or the dynamite killed the fish. The testimony was that the ice was under such

pressure that it had sheared off one of the three steel supports of the tower and that for a period of four seconds electricity may have discharged into the tower. It is the claim of plaintiff that the electricity escaped into the water and killed the fish in the lake. However, the record is silent on the effect this might have had. Any conclusion a jury would reach would be mere conjecture and could not be sustained. No connection as cause between the alleged escape of electricity and the death of the fish is established. What effect, if any, the electricity would have is a matter of which this court cannot take judicial notice, for the simple reason that it is not a matter of common knowledge. "The test is whether sufficient notoriety attaches to the fact involved as to make it proper to assume its existence without proof." 20 Am. Jur., Evidence, § 18. Plaintiff seems to rely on the theory of *post hoc, propter hoc.* That theory is, of course, not sufficient to sustain a verdict, especially where, as here, there is abundant evidence to support the contention of winter killing of the fish for lack of oxygen. Proof of causal connection must be something more than consistent with plaintiff's theory. McNamee v. Hines, 150 Minn. 97, 102, 184 N. W. 675, 677, where the court quoted with approval the following language:

"The burden of proof is upon the plaintiff to prove that some negligent act of defendant caused the death of deceased. It is not incumbent on the defendant to show how the accident happened. If the cause of its happening is not established, the defendant is entitled to prevail. The proof must establish causal connection beyond the point of conjecture. It must show more than a possibility of injury from defendant's acts."

Defendant admits conducting two blasting operations with dynamite on March 15. In one hole it placed three half-pound sticks. In the other there were two such sticks. The charges were not ignited simultaneously. Taking the view of the evidence most favorable to plaintiff, the dynamite could not have affected any fish more than 30 feet away. There was testimony that the blasts would not affect anything more than from eight to ten feet away.

Two fish came to the surface through one of the blasted holes at the time of dynamiting. However, the testimony was that these fish were "rigid" and "curved," which would indicate that they had been dead for a long time.

For the same reason that we cannot take judicial notice of the effect of the electricity upon the water, we cannot do so with reference to the blasts of dynamite. The contention that all the minnows and fish, or even a substantial part of them, in a lake of this size were killed by these blasts would likewise be merely speculative and conjectural. There is no causal connection shown between the alleged negligence and the claimed damage. Bauer v. Miller Motor Co. 197 Minn. 352, 267 N. W. 206. The trial court should have directed a verdict for defendant.

The order denying judgment notwithstanding the verdict is reversed with directions to enter judgment for defendant.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.