Chad **ANDERSON**, By and Through his parent and natural guardian, Janice **ANDERSON**; et al., Plaintiffs,

Steven Glanz, et al., Appellants,

v.

**CITY OF COON RAPIDS**, Minnesota, et al., Lundquist, Wilmar, Potvin and Bender, Inc., et al., Respondents.

No. CX–92–819.

Court of Appeals of Minnesota.

Nov. 10, 1992.

Review Denied Jan. 15, 1993.

Douglas E. Schmidt, Wilbur W. Fluegel, Sieben, Gross, Von Holtum, McCoy & Carey, Minneapolis, for Steven Glanz, et al.

Diana Young Morrissey, Keith A. Dotseth, Faegre & Benson, Minneapolis, for City of Coon Rapids, Minn., et al.

William M. Hart, Mark J. Heley, Richard L. Pemberton, Jr., Meagher & Geer, Minneapolis, for Lundquist, Wilmar, Potvin and Bender, Inc., et al.

Considered and decided by RANDALL, P.J., and AMUNDSON and SCHULTZ, JJ.

## OPINION

### HAROLD W. SCHULTZ, Acting Judge.*

Appellants seek review of the trial court's dismissal of their claims by a grant of a partial summary judgment motion brought by respondents City of Coon Rapids and Tom Herbst. Appellants challenge the trial court's conclusion that they failed to present sufficient evidence of causation to withstand summary judgment.

Respondent Lundquist, Wilmar, Potvin and Bender, Inc. filed a notice of review challenging the denial of its motion for summary judgment. It argues the trial court erred in finding the statute of limitations set out in Minn.Stat. § 541.051 relating to claims arising from unsafe and defective conditions of an improvement to real property did not apply to appellants' claims.

## FACTS

The City of Coon Rapids operates and maintains the Joseph Cook Ice Arena for recreational use by local residents and visitors. Tom Herbst, an employee of the City, manages the arena. The City maintains the arena's ice surface by using a Zamboni ice resurfacing machine (Zamboni).

In 1985, responding to complaints that the arena was too cold, Herbst authorized that the intake vents in the arena be sealed and the exhaust fans turned off. In further response to concerns about the temperature inside the arena, the City hired Lundquist, Wilmar, Potvin and Bender, Inc. (LWPB), a professional engineering firm, to undertake a study of the arena and to recommend changes in the arena's heating and ventilation system.

From December 1986 to February 1987, a number of persons, including the appellants, were allegedly exposed to an excess of nitrogen dioxide gas from the Zamboni's engine exhaust while using the arena facilities. Appellants, along with numerous other persons, brought suit against the City claiming to have suffered lung injury or other damages as a result of the exposure to nitrogen dioxide. The numerous plaintiffs were denied certification as a class action due in part to the trial court's finding that individualized evidence of causation was a necessity in the lawsuits.

The City brought a partial summary judgment motion directed at the ten appellants, claiming individualized evidence of causation was lacking in their claims. For six of the appellants, the City claims the medical records and the report issued by appellants' medical expert reveal no medical basis for diagnosing a nitrogen dioxide injury. The remaining four appellants provided no medical opinion regarding any nitrogen dioxide-caused injuries. In opposition to the motion, appellants produced the affidavits and medical opinions of Dr. Bowen, a physician, and Dr. Lipsey, a toxicologist.

Dr. Bowen is a medical doctor specializing in pulmonology. Dr. Bowen submitted an affidavit listing a number of symptoms of nitrogen dioxide exposure and stated "it is reasonable to conclude that any person who developed the symptoms above-described * * * suffered at least an immediate and acute injury of the lungs * * *, nasal passages and throat." The affidavit did not match any of the named appellants with specific symptoms. Dr. Bowen also conducted a medical examination of six of the appellants and his medical reports indicate no evidence of injury solely attributable to nitrogen dioxide exposure.

Dr. Lipsey is a chemical environmental toxicologist. Dr. Lipsey's affidavit lists the appellants by name, lists a number of symptoms of nitrogen dioxide exposure and concludes with his opinion that the various listed symptoms "all were caused by the exposure of these individuals to nitrogen dioxide at the Cook Ice Arena in the winter of 1986–87." Lipsey's affidavit also did not

---

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

address each appellant and his or her alleged injuries individually.

The City argues the affidavits along with appellants' medical records were insufficient proof that the exposure to nitrogen dioxide caused the alleged injuries. The trial court agreed with the City and granted its motion for partial summary judgment.

In 1991, plaintiffs filed an amended complaint naming LWPB and Leonard Lundquist, the corporate officer who signed the report on the arena, as additional defendants. The complaint alleged LWPB was negligent in performing the study and in making its recommendations as to the condition of the arena. Specifically, it alleged LWPB was negligent in failing to call attention to the boarded-up ventilation system and instead complimented the arena management on the "excellent job of operating and controlling the building mechanical and electrical systems."

LWPB brought a motion for summary judgment claiming the statute of limitations set out in Minn.Stat. § 541.051 (1990) barred any action for damages arising out of the defective and unsafe condition of an improvement to real property brought against the party providing the improvements more than two years after the discovery of injury. LWPB claimed its report was part of the planning stage in making improvements to the arena's heating and ventilation system and so was covered under the statute. Plaintiffs argued their suit was not based upon a defective or unsafe improvement to the arena, but upon LWPB's negligence in advising the City as to the maintenance and day-to-day operation of the facility.

## ISSUES

I. Did the trial court err in granting partial summary judgment to the City of Coon Rapids based on the conclusion that appellants presented no specific medical opinion evidence establishing causation in their claims?

II. Did the trial court err in denying LWPB's motion for summary judgment based on the conclusion that plaintiffs' claims are not barred by Minn.Stat. § 541.-051?

## ANALYSIS

On appeal from summary judgment, the reviewing court must determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The reviewing court must view the evidence in the light most favorable to the one against whom summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982). This court need not defer to the trial court's conclusions on questions of law. *County of Lake v. Courtney*, 451 N.W.2d 338, 340 (Minn. App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990).

### I.

When the central issue in a lawsuit involves medical factors of which an ordinary layman cannot reasonably possess well-founded knowledge, there must be expert testimony, based on an adequate factual foundation, that the thing alleged to have caused the injury not only might have done so, but in fact did cause such injury. *Stahlberg v. Moe*, 283 Minn. 78, 85, 166 N.W.2d 340, 345 (1969). Appellants claim the affidavits and reports of Dr. Bowen and Dr. Lipsey provide the evidence of causation necessary in this case.

Appellants state that no question exists as to Dr. Bowen's qualifications or his ability to express a medical opinion on appellants' claims. They are correct. The trial court did not exclude the affidavit testimony of Dr. Bowen based on lack of medical qualifications. Instead, the trial court found Dr. Bowen's expert opinion was insufficient to show causation in this case.

In *Christensen v. Northern States Power Co.*, 222 Minn. 474, 475–76, 25 N.W.2d 659, 660–61 (1946), the court held that an affirmative expert opinion was required to prove that defendant's dynamite explosion and the escape of electricity from defendant's power lines killed the fish in plain-

tiff's lake. Affirmative expert testimony was required because determining the cause of the death of the fish was not a matter of common knowledge. *Id.* at 476, 25 N.W.2d at 660. Plaintiff could not rely on a "post hoc, propter hoc" theory where there was evidence to support other causes of the death of the fish. *Id.* at 476, 25 N.W.2d at 661.

■ Dr. Bowen and Dr. Lipsey's affidavits proceed on the same "post hoc, propter hoc" type of theory. The conclusions in both affidavits assume appellants' alleged injuries began only after the nitrogen dioxide exposure, yet a number of appellants had preexisting medical conditions prior to the alleged exposure. Dr. Bowen conducted medical examinations on six of the appellants. In none of those six cases could Dr. Bowen state that any alleged injury was caused by nitrogen dioxide exposure.

In the cases of Jeanette Kemp, Douglas Olson and Don Riesberg, Bowen was unable to attribute any symptoms specifically to the nitrogen dioxide exposure due to the longstanding history of smoking for each. In the case of Eric Vargas, Bowen's examination found no evidence of respiratory impairment or asthma. Bowen's report on Eric Olson indicated he could not explain Olson's persistent respiratory complaints. Upon examining Eugene Witucki, Bowen stated it was impossible for him to distinguish the cause of Witucki's chronic asthma.

Therefore, although six appellants sought medical treatment, Dr. Bowen could offer no affirmative medical opinion supporting the claim that inhalation of nitrogen dioxide caused their alleged injuries, nor could he explain away other possible causes of their symptoms.

The remaining four appellants were not examined by any medical expert so no medical opinion specific to each was offered. The medical records for three of the four indicated a history of either asthma, persistent coughing or vocal strain and vocal chord nodules that had existed for more than a year prior to the alleged exposure. A physician's report on Lee Wegener, the tenth appellant, stated it was unlikely he had significant lung injury at the time of the nitrogen dioxide exposure and now had no evidence of restriction or obstruction.

Therefore, the trial court did not err in concluding that Dr. Bowen's affidavit, when viewed with appellants' medical records, was insufficient to establish that nitrogen dioxide exposure and not some other event was the cause of appellants' alleged injuries.

■ Dr. Lipsey's affidavit stated the appellants experienced symptoms that were "all caused by the exposure to nitrogen dioxide at the Cook Ice Arena in the Winter of 1986–87." The trial court concluded that Lipsey lacked the foundation to issue a specific medical opinion as to appellants' personal injury claims. Lipsey's affidavit failed to address any of the alternative explanations for the symptoms mentioned in appellants' medical records. His opinion is without benefit of any supporting medical records or medical opinions regarding the appellants at issue. Appellants argue that Dr. Lipsey was allowed to offer similar testimony in the related case of *Green v. City of Coon Rapids,* 485 N.W.2d 712 (Minn.App.1992), *pet. for rev. denied* (Minn. June 30, 1992). However, when Dr. Lipsey testified at the *Green* trial, there were medical records and opinions substantiating his conclusions while in this case the medical records can only provide causation evidence contrary to Dr. Lipsey's offered opinion.

Where there is no affirmative medical testimony that specifically addresses itself to causation as it relates to the individual appellants' medical histories, a mere list of symptoms from a medical expert, appellants' claims that they experienced such symptoms and a summary opinion as to the relatedness of these two things does not suffice to establish causation in an individual's case. The trial court did not err in finding that Dr. Lipsey's affidavit was insufficient to establish causation in appellants' claims.

## II.

■ LWPB filed a notice of review under Minn.R.Civ.App.P. 106 seeking review

of the denial of summary judgment at the time that appellants' challenge to the grant of the City's partial summary judgment was heard. A notice of review gives the appellate court the discretion to review an issue not independently appealable where the case is already before the appellate court. *Kostelnik v. Kostelnik*, 367 N.W.2d 665, 668–69 (Minn.App.1985), *pet. for rev. denied* (Minn. July 26, 1985).

■ Minn.Stat. § 541.051 subd. 1(a) (1990) states in relevant part:

[N]o action by any person in contract, tort or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of any improvement to real property or against the owner of the real property more than two years after the discovery thereof.

LWPB claims the arena is an improvement to real property and that it was hired to plan additional improvements to that property. LWPB argues appellants are alleging injuries due to the defective and unsafe condition of an improvement to the arena and, therefore, their claims are barred by the two-year statute of limitations.

The trial court found that LWPB's allegedly negligent activity came at a time separate and apart from any actual property improvement to the arena and so was not covered under the statute. In this respect, appellants' claims are similar to the facts in *Horvath v. Liquid Controls Corp.*, 455 N.W.2d 60, 63 (Minn.App.1990), *pet. for rev. denied* (Minn. July 13, 1990).

In *Horvath*, an employee at an ammonia facility died from ammonia fumes. Plaintiff was permitted to proceed on her claim that the designer of the facility had breached a duty of due care in advising the employer how to operate the facility safely. This court held the claims relating to this breach of duty were not barred:

[I]f safety information was provided after substantial completion of the facility that led * * * employees to believe there was a safety feature which would have prevented the fatal accident, that activity would not come within [Minn.Stat. § 541.051], just as a "repair" does not. It is not a cause of action arising out of an "improvement to real property."

*Horvath*, 455 N.W.2d at 64. Here, LWPB's report contained statements relating to the day-to-day operation of the arena, including a statement that the City was appropriately maintaining and operating the arena. This advice was offered long after "substantial completion" of the arena and was arguably relied upon by the City. Therefore, under *Horvath*, the recommendations contained in LWPB's report are not related to an improvement to real property and such activity is not covered under Minn.Stat. § 541.051.

■ Furthermore, design or planning activities must result in an actual improvement to the real property in order for the statute of limitations coverage to be applicable; a repair to the property is not enough. *Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 450 N.W.2d 183 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 22, 1990). Here, no work on the arena was ever undertaken. Resolving all factual issues against LWPB as it was required to do, the trial court found that the claims against LWPB and Lundquist did not arise out of an improvement to real property. The denial of summary judgment was proper.

## DECISION

Appellants failed to produce sufficient evidence of causation to put their claims before a jury. No evidence specifically linked injuries suffered by appellants with the alleged nitrogen dioxide exposure. The trial court's grant of the City's motion for partial summary judgment was proper.

The statute of limitations set out in Minn.Stat. § 541.051 does not bar plaintiffs' claims where the alleged negligence on the part of LWPB did not arise out of an improvement to real property. The trial

court's denial of LWPB's motion for summary judgment was proper.

Affirmed.