Marlys HORVATH, as trustee for the heirs at law of Hillard Horvath, deceased, Appellant,

v.

LIQUID CONTROLS CORPORATION, Farmers Union Central Exchange, Incorporated, Respondents.

FARMERS UNION CENTRAL EXCHANGE, INCORPORATED, Defendant and Third–Party Plaintiff, Respondent,

v.

O'DAY EQUIPMENT, INC., Third–Party Defendant, Respondent.

No. C2–89–1890.

Court of Appeals of Minnesota.

May 8, 1990.

Review Denied July 13, 1990.

Martin Berg, Roseau, for Marlys Horvath, as trustee for the heirs at law of Hillard Horvath, deceased.

Joel A. Flom, Jeffries, Olson & Flom, P.A., Moorhead, for Liquid Controls Corp.

Richard C. Taylor, Dickel, Johannson, Taylor & Rust, Crookston, for Farmers Union Cent. Exchange, Inc.

Carol E. Johnson, Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, N.D., for O'Day Equipment, Inc.

Considered and decided by RANDALL, P.J., and FOLEY and GARDEBRING, JJ.

## OPINION

FOLEY, Judge.

Appellant Marlys Horvath, as trustee for the heirs at law of Hillard Horvath, deceased, appeals from summary judgment that her wrongful death claim is barred by the 10–year statute of repose of Minn.Stat. § 541.051, subd. 1 (1988). Respondents Farmers Union Central Exchange, Inc. (CE-NEX), Liquid Controls Corporation and O'Day Equipment, Inc. seek review of the trial court's denial of awards to them of deposition costs. We affirm in part, reverse in part and remand.

## FACTS

Decedent Hillard Horvath, supervisor of the anhydrous ammonia department of Farmers Union Oil Company of Roseau, Minnesota, died after being overcome by anhydrous ammonia fumes on October 24, 1986, after he drove off on a tractor hitched to a "nurse tank" without disconnecting a fill hose and broke piping causing the release of anhydrous ammonia. His heirs have received compensation under the Minnesota Workers Compensation Act.

In June 1987, the plaintiff/trustee served a summons and wrongful death complaint on CENEX and Liquid Controls. CENEX then served O'Day with a third-party complaint, and the plaintiff/trustee served a summons and complaint on O'Day. The actions were consolidated by stipulation in November 1988. Farmers Union Oil, the owner of the facility and decedent's employer, is not a party to this action.

Construction of the facility was completed by April 14, 1976. It has been owned and operated by Farmers Union Oil since then. The facility was designed and installed by CENEX. Deposition testimony indicates Farmers Union Oil was a shareholder of CENEX and was thereby entitled to look to CENEX for advice and information in the construction and subsequent operation of the facility. Liquid Controls manufactured some component parts supplied to O'Day, which in turn supplied them to either CENEX or Farmers Union Oil.

On July 10, 1989, the day of hearing on summary judgment motions of CENEX, Liquid Controls and O'Day, the plaintiff/trustee served a motion to amend her complaint. The motion to amend was heard two weeks later. On August 1, 1989, judgment of dismissal was entered based on an order granting the summary judgment motions. The trial court found there was no need to reach the motion to amend because the plaintiff/trustee's claim was "barred by Minn.Stat. § 541.051." Nonetheless, the trial court stated it had "considered the proposed amended complaint in [its] decision to dismiss."

## ISSUE

Did the trial court err in granting summary judgment that *all* of the plaintiff/trustee's claims are barred by Minn. Stat. § 541.051?

## ANALYSIS

The plaintiff/trustee alleges the trial court erred in finding her claims to be barred by Minn.Stat. § 541.051. Minn.Stat. § 541.051 provides in pertinent part:

Subdivision 1. (a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for * * * wrongful death, arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property * * * more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is

sufficiently completed so that the owner * * * can occupy or use the improvement for the intended purpose.

In our review on appeal from summary judgment we determine whether there are genuine issues of material fact for trial on the merits and whether the trial court erred in applying the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

The trial court found the facility to be an improvement to real property within the meaning of the statute. The trial court also found the date of substantial completion to have been April 14, 1976. The October 24, 1986 fatal accident was slightly more than 10 years later.

The plaintiff/trustee alleges, however, that certain events subsequent to initial construction give rise to claims not barred by the statute. They are (1) a change in the size of an excess flow valve made shortly after initial completion of the facility in April 1976; (2) meter repairs; (3) a change in the size of a pumping motor and the addition of piping in May 1978; and (4) an ongoing duty to use due care in providing safety information.

*Change in Excess Flow Valve.*

■ The plaintiff/trustee asks that we find this alleged activity to be a "repair." Subsequent to oral argument, this court decided *Hartford Fire Insurance Co. v. Westinghouse Electric Corp.*, 450 N.W.2d 183, 186 (Minn.Ct.App.1990) (replacement of blower fan seal in 200 ton generator a repair and not an improvement to real property subject to Minn.Stat. § 541.051), *pet. for rev. denied* (Minn. Mar. 22, 1990). We find the 1976 change in the excess flow valve was not a repair and is included under the definition and umbrella of "improvement to real property."

It is undisputed this change was made because the original design was not working as intended. When it was discovered the excess flow valve was too sensitive for certain purposes, it was made less sensitive. This change was made contemporaneously with the initial building of the facility. This is more properly characterized as a design change in an improvement to real property, not a repair. *See Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 451 (Minn.1988) (common sense interpretation to be given phrase "improvement to real property"). As such, this activity does not remove the bar of the 10–year statute of repose because it occurred more than 10 years before the fatal accident.

*Meter Repairs.*

■ The plaintiff/trustee does not point to any negligence in repairs made to meters that measured the anhydrous ammonia. Her argument is that because work was done on the meters, a duty arose to change the original design to add more safety features. We disagree. The meter repairs in no way implicated safety features or contributed to the accident. *Cf. Hartford*, 450 N.W.2d at 187 (facets of repair conduct ratifying original design decisions become part of repair decisionmaking and action).

*Change in Pumping Motor.*

■ The plaintiff/trustee argues that when a new pump was installed in 1978 to enable the main tank to "suck" anhydrous ammonia out of trucks delivering anhydrous ammonia to the facility, the change necessitated alterations in the excess flow valves. This argument appears to be circular in nature.

The plaintiff/trustee's own expert opines that an excess flow valve could not have prevented the fatal accident. Her expert claims that only a stop valve or a remote shut off valve could have prevented the free flow of anhydrous ammonia in such a situation. We are not persuaded that just because the new pump might have required changes in the excess flow valves, a new duty was created to add safety features which had never been present. *See Hartford*, 450 N.W.2d at 187.

*Ongoing Duty to Provide Information.*

■ The plaintiff/trustee alleges there are material issues of fact to be determined as to whether there was an undertaking of an ongoing duty to use due care in advising Farmers Union Oil, the owner-operator, and its employees how to safely operate

the anhydrous ammonia facility. We agree. While suit may be barred by Minn. Stat. § 541.051 for causes of action arising out of the defective or unsafe condition of an improvement to real property, if safety information was provided after substantial completion of the facility that led Farmers Union Oil or its employees to believe there was a safety feature which would have prevented the fatal accident, that activity would not come within the statute, just as a "repair" does not. It is not a cause of action arising out of an "improvement to real property." *See Hartford,* 450 N.W.2d at 186.

 Where it is reasonably foreseeable the employees of an owner-operator might reasonably rely on information in providing for their own safety in using the facility, a duty to use due care in providing the information arises, and failure to use due care constitutes negligence. Notwithstanding that claims arising out of an "improvement to real property" are barred by the 10–year statute of repose, a separate and distinct obligation to use due care exists in providing safety information to personnel of Farmers Union Oil involving the use of the facility and upon which the personnel relied after substantial completion of construction and is not governed by Minn.Stat. § 541.051.

 If Hillard Horvath's death was causally related to negligence of this type, the cause of action is governed by the wrongful death statute, Minn.Stat. § 573.02 (1986), and the cases relating thereto. Whether the wrongful death action was timely filed under the statute is a fact issue to be resolved at trial.

 The plaintiff/trustee filed deposition transcripts with the trial court that are sufficient to show there is a factual dispute as to that duty. There is evidence suggesting CENEX was aware Farmers Union Oil was relying on safety advice communicated through manuals, safety seminars, informational meetings and training sessions. A former CENEX construction department manager gave deposition testimony CENEX did not expect local cooperatives to have engineering expertise. Another CE-NEX manager testified CENEX normally does not expect local cooperatives to have expertise about valves. The manager of the Farmers Union Oil facility testified CENEX knew Farmers Union Oil was relying on CENEX for information.

That manager also in essence indicated by his testimony that Farmers Union Oil employees were led to believe that if a person drove away hooked up to the pump, a valve would trip to stop the flow of ammonia. While plaintiff/trustee has as much as admitted through her expert that a defect in the excess flow valves was not causally related to the death, if Farmers Union Oil employees were told after substantial completion of construction that an excess flow valve would prevent this kind of accident, a cause of action might have arisen.

All of this suggests fact issues. *See Hubred,* 442 N.W.2d at 310. Fact issues are not to be resolved on a summary judgment motion, but are to be decided by the trier of fact at a trial on the merits. The oft-cited case of *Sauter v. Sauter,* 244 Minn. 482, 70 N.W.2d 351 (1955), speaks to the role of the court on appeal in reviewing summary judgment.

A motion for a summary judgment may be granted pursuant to Rule 56.03 only if, after taking the view of the evidence most favorable to the nonmoving party, the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that he is entitled to judgment as a matter of law. It is essential to bear in mind that the moving party has the burden of proof and that the nonmoving party has the benefit of that view of the evidence which is most favorable to him. The salutary purpose and useful function of summary judgment proceedings as a means of securing the just, speedy, and inexpensive determination of the action * * * is well recognized, but resort to summary judgment was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. In other words a summary judgment is

proper where there is no issue to be tried but is wholly erroneous where there is a genuine issue to try.

*Sauter,* 244 Minn. at 484–85, 70 N.W.2d at 353 (footnotes omitted) (emphasis in original).

 The plaintiff/trustee should be allowed to amend her complaint to add claims for negligence in providing safety information after substantial completion of the facility. Upon remand, the trial court should determine to what extent, if any, each respondent could be liable.

We also find the plaintiff/trustee should be allowed to amend her complaint to allege fraud in providing safety information that could operate to toll the operation of the statute.

> Certainly, if the defendant has by fraud prevented the plaintiff from discovering the defective and unsafe condition within [10] years after substantial completion of construction, the statute is tolled until the plaintiff could, by reasonable diligence, have discovered the defective condition.

*Wittmer v. Ruegemer,* 419 N.W.2d 493, 497 (Minn.1988). We find sufficient support in the record, in particular in the deposition transcripts, to show a factual dispute whether the elements of fraud are met. *See Davis v. Re–Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967). This issue was never addressed by the trial court and should be resolved on remand.

The plaintiff/trustee claims 1988 Minn. Laws ch. 547 combined with Minn.Stat. § 541.051 makes the latter unconstitutional on equal protection grounds. This matter should also be resolved on remand.

Respondents seek review as to whether the trial court abused its discretion in denying motions of CENEX, Liquid Controls and O'Day for awards of deposition costs under Minn.Stat. § 549.04 (1988). All requests for costs are deferred until final resolution of the case at the trial court level.

## DECISION

There are material issues of fact to be determined as to whether an ongoing duty to use due care in providing safety information to the owner-operator of the facility and its employees was undertaken after substantial completion of construction and whether any duty undertaken was breached. The wrongful death statute and the cases relative thereto govern this cause of action.

There are also material issues of fact to be determined as to whether the operation of Minn.Stat. § 541.051 was tolled by fraud in the provision of safety information to the owner-operator of the facility and its employees.

All requests for costs are deferred until final resolution of the case at the trial court level.

We affirm in part, reverse in part and remand for further proceedings in light of this opinion. Constitutional challenges are kept open in view of this remand.

Affirmed in part, reversed in part and remanded.