**ALLIANZ INSURANCE COMPANY,
Appellant,**

**v.**

**PM SERVICES OF EDEN PRAIRIE, INC., a Minnesota corporation, d/b/a Facilitech and Welsh Companies, LLC, a Delaware corporation, Respondent.**

No. A04–898.

Court of Appeals of Minnesota.

Jan. 18, 2005.

---

Michael D. O'Neill, O'Neill, Grills & O'Neill, P.L.L.P., St. Paul, MN; and Jeffrey R. Learned, (pro hac vice), Grotefeld & Denenberg, L.L.C., Bingham Falls, MI, for appellant.

Louise A. Behrendt, John F. Angell, Stich, Angell, Kreidler & Dodge, P.A., Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; SCHUMACHER, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

Appellant Allianz Insurance Company challenges summary judgment granted to respondent PM Services of Eden Prairie Inc., d/b/a Facilitech, arguing that the district court erred by applying the two-year limitation period of Minn.Stat. § 541.051 (2002) to its claims against respondent for damages caused by improper installation and repair of water-purification systems. Because the district court did not err by holding that installation and contemporaneous corrective work on the water-purification systems is an improvement to real property subject to the two-year statute of limitations for improvements to real estate, we affirm.

## FACTS

In 2000, Buffets, Inc. (Buffets) hired respondent to install Ecolab water-purification systems to filter city water for soft drink and ice machines on each of the four floors of its corporate headquarters. Respondent began installing the water-purification systems on October 6, 2000. As part of the installation, respondent mounted the filter units in the kitchenette areas and plumbed the filters into the main water system through a series of plastic PVC "tee" fittings.

Within a week, the modified plumbing for the purification system on the first floor developed a pinhole leak, Buffets notified respondent of the problem, and on or about October 12, 2000, respondent returned and replaced the plastic "tee" fitting with a metal fitting. Respondent billed Buffets for installation and contemporaneous follow-up work on the purification systems at an hourly rate and submitted a billing invoice, which lists the dates of service for all the work occurring between October 6 and October 12, 2000. The invoice also states that respondent "[i]nstalled water filters on four[] floors for the pop and ice machines," then "[r]e-

paired a pinhole leak on the filter PVC "T" by "replac[ing] and re-assembl[ing] the fitting as needed," and finally "[v]erified operations." Verifying operations generally involves turning the water back on, checking all the systems for leaks, and ensuring that the systems are working properly.

On October 15, 2000, the water-purification systems broke and caused considerable water damage to Buffets' building. A report prepared by appellant's expert on December 28, 2000, stated that the first, second, and third floor water-purification systems developed leaks due to over-tightening of the fittings during installation. The report went on to state that the PVC fittings on the second and third floor were broken and that part of the first-floor fitting was also damaged. Destructive testing of the fittings was conducted in November 2002, and the testing revealed that the PVC "tee" fittings in the basement, second, and third floors were cracked. In opposing respondent's motion for summary judgment, the same expert submitted an affidavit in which he stated that the proximate cause of the water damage resulted from respondent's negligent repair of the filtration system on or about October 12 and not the original installation.

Appellant insured Buffets for the damage resulting from October 15, 2000, leaks, covered Buffets' claims, and based on its subrogation rights filed a complaint on August 13, 2003, alleging that the original installation of the water-purification systems and the repair of the systems was negligent and resulted in the loss. The district court granted summary judgment in favor of respondent. The court concluded that the installation of the water-purification system was an improvement to real property and as such the claims were barred under the two-year statute of limitations of Minn.Stat. § 541.051 (2002).

The district court also concluded that to the extent appellant's claims arose from the corrective work, it was part of the installation, and therefore barred by Minn. Stat. § 541.051. Finally, the district court concluded that appellant's expert's affidavit was insufficient to create a genuine issue of material fact and all of appellant's claims were barred by section 541.051 as a matter of law.

## ISSUES

1. Is the installation of water-purification systems an improvement to real property subject to the two-year statute of limitations contained in Minn.Stat. § 541.051 (2002)?

2. Did the district court err in concluding that respondent's follow-up work on or about October 12, 2000, was part of the installation and therefore covered by Minn. Stat. § 541.051?

3. Did the district court err by granting summary judgment after concluding that there were no genuine issues of material fact?

## ANALYSIS

■ The district court should grant summary judgment when there is no genuine issue of material fact and either party is entitled to a judgment as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). On appeal from summary judgment, a reviewing court asks (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence is viewed in a light most favorable to the party against whom judgment was granted. *Fabio*, 504 N.W.2d at 761. Even though an appellate court may disagree with the district court's analysis of some issues, summary judgment will be affirmed if it can be sustained

on any grounds. *Myers v. Price*, 463 N.W.2d 773, 775 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991). The construction and applicability of a statute of limitation is a question of law that is reviewed de novo. *Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn.1998).

## I.

We first address appellant's argument that the district court erred in holding that the water-purification systems were an improvement to real property, and therefore the claims are barred under Minn.Stat. § 541.051, subd. 1(a) (2002). The statute limiting claims on improvements to real property provides in relevant part:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property ... arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought ... more than two years after discovery of the injury ... nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

Minn.Stat. § 541.051, subd. 1(a).

The Minnesota Supreme Court defines an improvement to real property as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 451 (Minn.1988) (quoting *Pac.*

*Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977) for the definition of improvement to real property). We use a common sense approach when determining whether something is an improvement to real property for purposes of the statute of limitations. *Williams v. Tweed*, 520 N.W.2d 515, 518 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994). While statutes that limit damages based on improvements to real property are construed strictly, nonetheless, courts give effect to the plain meaning of the statute's words without resort to technical legal constructions of its terms. *Kline v. Doughboy Recreational Mfg. Co.*, 495 N.W.2d 435, 439 (Minn.App.1993).

Although there is no Minnesota caselaw that directly addresses the issue of whether a water-purification system constitutes an improvement to real property, several court decisions deal with various types of improvements.[1] *See, e.g., Red Wing Motel Investors v. Red Wing Fire Dep't*, 552 N.W.2d 295, 297 (Minn.App.1996) (treating a sprinkler system for fire protection purposes as an "improvement" to real property), *review denied* (Minn. Oct. 29, 1996); *Kline*, 495 N.W.2d at 438 (holding an above-ground swimming pool is an "improvement" to real property); *Patton v. Yarrington*, 472 N.W.2d 157, 159–60 (Minn.App.1991) (a smoke detector is an "improvement" to real property), *review denied* (Minn. Aug. 29, 1991); *Frederickson v. Alton M. Johnson Co.*, 402 N.W.2d 794, 796–97 (Minn.1987) (electrical switchboards are an "improvement"); *Bulau v. Hector Plumbing & Heating Co.*, 402 N.W.2d 528, 529–30 (Minn.1987) (treating fireplace as an "improvement"); *Citizens Sec. Mut. Ins. Co. v. Gen. Elec. Corp.*, 394

---

1. We note that contemporaneously with our decision this court is releasing an opinion holding that a replacement of a roof covering is an improvement to real property subject to the two-year statute of limitations contained in Minn.Stat. § 541.051 (2002). *See Merritt v. Mendel*, 690 N.W.2d 570 (Minn.App. Jan. 18, 2005).

N.W.2d 167, 170 (Minn.App.1986) (stating light fixtures constituted an improvement), *review denied* (Minn. Nov. 26, 1986); *Henry v. Raynor Mfg. Co.*, 753 F.Supp. 278, 282 (D.Minn.1990) (a garage door opener is an improvement to real property).

Appellant claims the installation of water-purification systems on each floor was not an improvement to real property because the purification systems do not fit within the definition of an improvement to real property. Specifically, appellant argues that the purification systems are removable and do not enhance the building's capital value.

■ To be sure, compared to total building cost and even the total plumbing system, the water-purification systems are minor. However, the water-purification systems were plumbed into and thus were integrated into the building's water system and made the building more useful because the water was purified. Even though the water-purification systems could be removed, they were attached to the building and there is no indication that Buffets planned to remove the systems. Water-purification systems are at least as much a permanent improvement as an above ground-swimming pool or a smoke detector. *See Patton*, 472 N.W.2d at 159–60; *Kline*, 495 N.W.2d at 438. Appellant cites *Massie v. City of Duluth* for support, but *Massie* is distinguishable because the court based its determination that the public waterslide was not an improvement on the fact the city removed it every winter for storage. 425 N.W.2d 858, 861 (Minn. App.1988), *review denied* (Minn. Sept. 16, 1988). There is no showing that the purification systems are designed or intended to be regularly removed or that their owners in fact do remove them.

Appellant also argues that the water-purification systems did not enhance the capital value of the building. Minnesota courts do not apply the definition of improvement rigidly but rather evaluate the issue based on common sense. *Sartori*, 432 N.W.2d. at 451. Similarly, enhancement of capital value is not necessarily required to make the shorter limitation period applicable, and this court has found that a swimming pool and conveyor system in a manufacturing plant were improvements to real property even though they did not increase the capital values of the buildings. *See Kline*, 495 N.W.2d at 439; *Thorp v. Price Bros. Co.*, 441 N.W.2d 817, 819–20 (Minn.App.1989), *review denied* (Minn. Aug. 15, 1989). The water-purification systems improved the quality of the drinking water, which made the building more useful.

Appellant argues that *Brandt v. Hallwood Mgmt. Co.*, 560 N.W.2d 396 (Minn. App.1997), *review denied* (Minn. June 11, 1997), is controlling in this case. *Brandt* is distinguishable. In *Brandt*, a carpenter was injured when he came into contact with an energized electric wire that was left over from demolition work. *Id.* at 398. The holding in *Brandt* focused on the applicability of Minn.Stat. § 541.051 (1996) to demolition work, not improvements. *Id.* at 399–400. We conclude that the installation of the water-purification systems is an improvement to real property and subject to the two-year statute of limitations set out in Minn.Stat. § 541.051.

## II.

Next appellant argues that respondent's replacement of the PVC fitting on the first-floor system and inspection of the other purification systems on or about October 12, 2000, constituted a repair and is therefore not subject to the two-year statute of limitations. No caselaw directly addresses the question of whether a correction made within a few days of faulty installation is covered by the two-year

statute of limitations, but several cases have addressed the distinction between an improvement and repair. *See Hartford Fire Ins. Co. v. Westinghouse Elec. Corp.*, 450 N.W.2d 183, 186–87 (Minn.App.1990), *review denied* (Minn. Mar. 22, 1990); *Horvath v. Liquid Controls Corp.*, 455 N.W.2d 60, 63 (Minn.App.1990), *review denied* (Minn. July 13, 1990).

In *Hartford*, the respondent designed and built a generator for a power plant. 450 N.W.2d at 185. Fifteen years later the generator's fan malfunctioned, and the respondent performed an inspection, did some repairs, and recommended replacing the rubber seal in the fan. *Id.* The power plant followed the recommendations and was supplied a defective seal, which ruptured and damaged the generator. *Id.* Three and one-half years later the power plant's insurer filed an action against numerous parties, including the rubber manufacturer and the designer. *Id.* This court held that replacement of the seal constituted an ordinary repair because it merely restored the value of the generator but did not increase its value. *Id.* at 186.

Several months later, this court in *Horvath* concluded that a contemporaneous change in a valve was not a repair and was included under the definition and umbrella of "improvement to real property" for the purpose of the ten-year statute of repose under Minn.Stat. § 541.051, subd. 1(a) (2002). 455 N.W.2d at 63. In *Horvath*, a supervisor at respondent's facility died after anhydrous ammonia fumes released from respondent's "nurse tank" overcame him. *Id.* at 62. Soon after the construction of the facility was completed, a change was made to the tank's excess flow valve after it was discovered that the valve was too sensitive for certain purposes. *Id.* at 63. The court reasoned that because the change had been made soon after the initial completion of the facility, the change was more properly characterized as a design change rather than a repair. *Id.* The *Horvath* court did not explain what it meant by a design change and how close in proximity to the original construction the change must be before that change is characterized as contemporaneous and part of the installation.

■ The law and facts suggest that the rule in *Horvath* is the more appropriate rule in this case. Here, like in *Horvath*, respondent made a change to the first-floor water-purification system almost immediately after installation because the installation resulted in a pinhole leak. Respondent did not replace the PVC fitting with an identical plastic fitting but installed a metal fitting in its place and inspected the other systems for leaks. Also like in *Horvath*, the water-purification system was not working as intended because a leak developed immediately as opposed to requiring ordinary repairs over time. Appellant argues that the close proximity of respondent's repair is irrelevant, but we disagree. Unlike in *Hartford*, in which fifteen years elapsed between the installation of the generator and the repair, here respondent returned within a few days to correct the installation, and within three days of that visit, all four water-purification systems leaked and caused damage. Respondent's contemporaneous adjustments to the initial installation are not ordinary repairs, but rather are best classified as part of the installation and therefore a claim must be sought within two years of discovery of the damage. We are not expanding the scope of a short statute of limitations, in which all repairs are bundled with the original installation, but merely holding that here, where respondent made contemporaneous adjustments within days of the installation, the adjustments were part of the installation and appellant's damages resulting from both

the installation and adjustments fall under the same two-year statute of limitations. To hold otherwise would create an anomaly in the statute of limitations. We do not believe the legislature intended that a specific, shorter two-year limitation for claims on the basic improvement project should be expanded to a six-year period just because a contemporaneous correction is made on the base project. The tail should not wag the dog.

Because respondent's actions on or about October 12 were contemporaneous with the installation of the water-purification systems, we conclude they fall within the definition of improvement and appellant's claims are time barred under Minn. Stat. § 541.051.

## III.

■ Appellant argues that its expert's affidavit, along with the billing invoice, create a genuine issue of fact as to whether respondent's actions on or about October 12, 2002, were a proximate cause of the water damage. The function of the district court on a motion for summary judgment is to determine whether any genuine issues of material fact exist, rather than weighing the evidence and deciding issues of fact. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn.1997). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" *Id.* at 69 (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Although proximate cause generally is a question of fact for the jury, "where reasonable minds can arrive at only one conclusion," proximate cause becomes a question of law and may be disposed of by summary judgment. *Lubbers v.*

*Anderson,* 539 N.W.2d 398, 402 (Minn. 1995).

■ Appellant is correct that there is an issue of fact over the extent to which respondent's replacement of the first-floor valve on or about October 12 was a proximate cause of the water damage. The district court stated that it was undisputed that the replaced fitting on the first floor did not contribute to the extensive water damage. However, both parties agree that water leaked from the first-floor purification system. Because there is nothing in the record indicating how much damage resulted from the first-floor leak, it was improper to find that the first-floor water-purification system was not a proximate cause of the damage. But these facts are not material because we find as a matter of law that respondent's actions on or about October 12 were contemporaneous with the installation of the water-purification systems and subject to the two-year statute of limitations.

Also appellant contends that the district court improperly gave greater weight to the first report of its expert and dismissed his later affidavit. Appellant's expert initially prepared a report, in which he stated that the water-purification systems broke due to improper installation, and later stated in an affidavit opposing respondent's motion for summary judgment that respondent's actions on or about October 12 were the proximate cause of the water damage. The district court noted that the affidavit did not include a discussion of how the repair was negligent, what was involved in the repair or whether or not the expert still believed his earlier conclusions. This affidavit contradicted his earlier report and failed to provide any plausible explanation for the incongruity. In any event, whether respondent's follow-up work on or about October 12 was a proximate cause of the water damage is irrele-

vant. The work was part of the original installation and subject to the two-year statute of limitation. Therefore, the district court properly ruled that appellant's expert's affidavit did not create a genuine issue of material fact.

Appellant also points to respondent's billing invoice, which described the work as two distinct services, the first involving the installation of the water-purification systems and the second involving the repair and verification of the other systems. Appellant also submitted depositions of respondent's employees, in which the employees used the term "repair." The specific semantics used by respondent's employees or in the billing invoice to describe the work performed is not dispositive of the issue. Respondent's actions were a continuation of the improvements to real property within the meaning of section 541.051 (2002); thus appellant failed to raise any genuine issues of material fact.

## DECISION

The district court did not err by concluding that the installation of water-purification systems is an improvement to real property, contemporaneous adjustments made to the systems were part of the installation, and any resulting damage was time-barred. The district court did not err by concluding that appellant failed to raise any genuine issues of material fact.

**Affirmed.**