Joseph Eugene **HOEKSTRA**,
petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. A13–0682.

Court of Appeals of Minnesota.

Nov. 25, 2013.

Robert D. Stoneburner, Stoneburner Law Office, Paynesville, MN, for appellant.

Lori Swanson, Attorney General, Adam Kujawa, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; HUDSON, Judge; and ROSS, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges his driver's license revocation, arguing that the police lacked a reasonable, articulable suspicion to justify a traffic stop under Minn.Stat. § 169.64, subd. 10(a)(2). We affirm.

## FACTS

Appellant Joseph Hoekstra pleaded guilty to fourth-degree driving while impaired under Minn.Stat. § 169A.20, subd. 1(1) (2010), and the district court convicted him of that offense. Respondent Minnesota Commissioner of Public Safety disqualified Hoekstra from holding a commercial driver's license, and Hoekstra petitioned for judicial review, arguing that his disqualification was the result of an unlawful traffic stop. Hoekstra also moved to consolidate his case with "the Intoxilyzer Source Code appeal."

At the implied-consent hearing, Minnesota State Patrol Trooper Casey Meagher testified as follows. On the evening of December 2, 2011, Trooper Meagher was in Meeker County driving an unmarked patrol car for "a safe and sober detail" focused on making "DUI stops and DUI arrests." While traveling on Highway 12 behind a pickup truck, he saw the truck's tail lamps, brake lights, and left-turn signal activate and the truck turn left onto Highway 24. The truck pulled onto the right shoulder of Highway 24 and either stopped or nearly stopped. Although Trooper Meagher saw no improper driving, he pulled behind the truck to determine whether the driver needed assistance. Trooper Meagher activated his rear emergency lights, believing that the truck's driver could not see them.

The truck then pulled back onto the road and, as it did, Trooper Meagher observed "covers over the top of the tail-

lights" on the truck. The covers consisted of "adhesive" "solid plastic" that went "over the top of th[e] taillight lens." The covers were after-market accessories with horizontal plastic stripes "every inch or inch and a half ... going from one side of the taillight lens to the other side as a decorative cover over the top" of the lens. According to Trooper Meagher, the covers reduce the tail lamps' light and make the tail lamps "blend in more with the vehicle." Trooper Meagher activated his vehicle's overhead emergency lights, and the truck pulled back over to the right shoulder and stopped. Trooper Meagher approached the truck and ultimately arrested Hoekstra for driving while under the influence of alcohol.

Hoekstra testified that the tail-lamp coverings on his truck were made of hard plastic, that they "block[ed] portions" of the tail lamps, and that they were on the tail lamps when he purchased the used truck approximately two months before his arrest. After his arrest, he attempted to remove the coverings but was unable to do so, stating that he has experience replacing headlamps or tail lamps but that these coverings "don't come off." He explained: "I struck a screwdriver in there and tried to get between the taillight and the trim.... I ... tr[ied] to pry them off but it'll ... take [the] lens and everything right off, it'll break the taillight."

The district court rejected Hoekstra's challenge to the validity of the traffic stop, reasoning that Trooper Meagher had a reasonable, articulable suspicion that Hoekstra violated Minn.Stat. § 169.64, subd. 10(a)(2)'s tail-lamp-cover prohibition. But the court stayed Hoekstra's case for the duration of "the Intoxilyzer Source Code appeal." After the supreme court filed its opinion in *In re Source Code Evidentiary Hearings in Implied Consent Matters*, 816 N.W.2d 525 (Minn.2012), the district court denied Hoekstra's petition to rescind his license revocation, reasoning that the supreme court, in *In re Source Code*, "effectively denied" Hoekstra's remaining challenge to the license revocation.

This appeal follows.

## ISSUE

Does the meaning of "covers" in Minn. Stat. § 169.64, subd. 10(a), include equipment or material that only partially covers a tail lamp?

## ANALYSIS

■ "The United States and Minnesota Constitutions protect '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *State v. Diede*, 795 N.W.2d 836, 842 (Minn.2011) (quoting U.S. Const. amend. IV and citing Minn. Const. art. I, § 10). "Evidence obtained as a result of a seizure without reasonable suspicion must be suppressed." *Id.; see also Ascher v. Comm'r of Pub. Safety*, 527 N.W.2d 122, 125 (Minn.App. 1995) (noting that "the exclusionary rule applies to evidence obtained from an unconstitutional checkpoint" (citing *Ascher v. Comm'r of Pub. Safety*, 505 N.W.2d 362 (Minn.App.1993), *aff'd*, 519 N.W.2d 183 (Minn.1994))), *review denied* (Minn. Mar. 21, 1995).

■ "[A] police officer ... [may] stop and temporarily seize a person to investigate that person for criminal wrongdoing if the officer reasonably suspects that person of criminal activity." *Diede*, 795 N.W.2d at 842 (quotation omitted); *see Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985) (applying reasonable-suspicion standard to license-revocation proceeding). "The reasonable-suspicion standard is not high," *Diede*, 795 N.W.2d at 843 (quotation omitted), and "is less de-

manding than probable cause or a preponderance of the evidence," *State v. Smith*, 814 N.W.2d 346, 352 (Minn.2012) (quotation omitted). An appellate court "review[s] de novo a district court's determination of reasonable suspicion of illegal activity" and "accept[s] the ... court's factual findings unless they are clearly erroneous." *Smith*, 814 N.W.2d at 350.

■ The district court concluded that Trooper Meagher lawfully stopped Hoekstra's pickup truck based on reasonable, articulable suspicion that Hoekstra violated Minn.Stat. § 169.64, subd. 10(a)(2), by operating his motor vehicle with tail-lamp coverings. *See* Minn.Stat. § 169.64, subd. 10(a)(2) (prohibiting "operat[ion of] a motor vehicle fitted with or otherwise having equipment or material that covers a headlamp, tail lamp, or reflector"). Hoekstra argues that Trooper Meagher lacked reasonable, articulable suspicion of that offense. We disagree.

■ "Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn.2004) (citing *State v. George*, 557 N.W.2d 575, 578 (Minn.1997)). Trooper Meagher's testimony suggests that Hoekstra's tail-lamp coverings are prohibited by Minn.Stat. § 169.64, subd. 10(a). Trooper Meagher testified that, before stopping Hoekstra's truck, he observed "covers over the top of the taillights" on the truck. The covers consisted of "adhesive" "solid plastic" that went "over the top of th[e] taillight lens." The covers were aftermarket accessories with horizontal plastic stripes "every inch or inch and a half ... going from one side of the taillight lens to the other side as a decorative cover over the top" of the lens. The covers reduced the tail lamps' light and made the tail lamps "blend in more with the vehicle." Hoekstra urges this court to reject Trooper Meagher's testimony because the trooper did not "personally perform[ ] a close examination or inspection of the pickup's taillight lenses." His argument is unpersuasive.

■ "Deference must be given to the district court's credibility determinations." *State v. Klamar*, 823 N.W.2d 687, 691 (Minn.App.2012); *see State v. Blacksten*, 507 N.W.2d 842, 847 (Minn.1993) (affirming district court when "trial judge heard the conflicting testimony, observed the witnesses, and chose to believe respondent"). By basing its factual findings on Trooper Meagher's testimony, the district court implicitly found the testimony credible. The court found that Trooper Meagher "observed a covering on the truck's taillights" and that the covers had segments that "horizontally cover the light." Hoekstra conceded that the tail-lamp coverings "cover portions of the taillight" and "block portions of the taillight."

Hoekstra argues that Trooper Meagher's testimony that Trooper Meagher could see some light emitting from the partially covered tail lamps shows that the trooper had no reasonable suspicion that the coverings "cover[ed]" the tail lamps under section 169.64, subdivision 10(a). We disagree.

Minnesota Statutes section 169.64, subdivision 10, provides as follows:

(a) Except as provided in paragraph (b), it is prohibited for any person to: (1) equip a motor vehicle with any equipment or material that covers a headlamp, tail lamp, or reflector; or (2) operate a motor vehicle fitted with or otherwise having equipment or material that covers a headlamp, tail lamp, or reflector.

(b) Paragraph (a) does not apply to: (1) any manufacturer's original equipment or material; (2) any equipment or material that is clear and colorless; or (3) the covering for auxiliary lights required under section 169.56.

An appellate court reviews statutory-interpretation questions de novo, *State v. Wilson*, 830 N.W.2d 849, 852 (Minn.2013), as legal questions, *State v. R.H.B.*, 821 N.W.2d 817, 820 (Minn.2012). An appellate court's "goal in statutory interpretation is to ascertain and give effect to the Legislature's intent." *Sanchez v. State*, 816 N.W.2d 550, 556 (Minn.2012). An appellate court interpreting a statute must apply its unambiguous plain meaning, *State v. Hayes*, 826 N.W.2d 799, 804 (Minn.2013), reading the statute "as a whole," *State v. Randolph*, 800 N.W.2d 150, 154 (Minn.2011).

An appellate court considering the plain and ordinary meaning of a word may consider dictionary definitions. *State v. Heiges*, 806 N.W.2d 1, 15 (Minn.2011). A cover is "[s]omething that ... is laid, placed, or spread over or upon something else." *The American Heritage Dictionary* 421 (4th ed. 2006). Trooper Meagher's testimony indicates that the coverings were placed upon the tail lamps, testifying that they were "covers over the top of the taillights" on the truck. The covers consisted of "adhesive" "solid plastic" that went "over the top of th[e] taillight lens" and reduced the tail lamps' light and made the tail lamps "blend in more with the vehicle."

Although the coverings did not *completely* cover the tail lamps on Hoekstra's truck or *completely* block the light from the tail lamps, reading the statute as a whole, we cannot construe "covers" to mean *completely* covers without failing to give independent effect to the word "completely" in Minn.Stat. § 169.56, subd. 5(b) (2010), which provides that "[n]o other ve-

hicle may be operated on a public highway unless the auxiliary lamps permitted in subdivisions 3 and 4 comply with the height requirements or are *completely covered* with an opaque material." (Emphasis added.) *See State v. Rick*, 835 N.W.2d 478, 483 (Minn.2013) (noting with disapproval that, "[i]f we applied the same statutory definition of 'transfer' in both places, our interpretation would render the statute redundant and we would fail to give independent effect to every word in the statute").

Moreover, although the coverings on Hoekstra's truck permitted *some* tail-lamp light to be visible, that fact is immaterial because the legislature has not exempted tail-lamp coverings from the scope of section 169.64, subdivision 10(a), on that basis. By analogy, the case of *State v. Johnson*, 713 N.W.2d 64 (Minn.App.2006), supports our conclusion. In *Johnson*, this court addressed the application of Minn.Stat. § 169.64, subd. 2 (2004), which, among other things, prohibited a person from "'dri[ving] or mov[ing] any vehicle or equipment upon any highway with any lamp or device displaying a red light or *any colored light*.'" 713 N.W.2d at 66 (quoting Minn.Stat. § 169.64, subd. 2 (emphasis added)). The district court suppressed the evidence against Johnson that resulted from a traffic stop, reasoning that the police officer who performed the stop lacked reasonable suspicion of a violation of Minn.Stat. § 169.64, subd. 2, because the vehicle's light display "did not constitute a 'display' of lights" because "the light was of a 'low level,' it was only a 'glow,' and it was not 'distracting' or 'unsafe.'" *Id.* at 65–66. We reversed the suppression order, reasoning that, although "the light did not shine on the ground, could not be seen from behind or in front of the motorcycle, and was only visible from the side," the statute did not contain these excep-

tions and did not "make exceptions for colored lights of a 'low level,' that are only a 'glow,' or are not 'distracting' or 'unsafe.'" *Id.* at 67.

In this case, we conclude that the district court properly (a) determined that reasonable, articulable suspicion justified Trooper Meagher's traffic stop of Hoekstra's vehicle and (b) sustained the revocation of Hoekstra's driver's license.

## DECISION

Because the meaning of "covers" in Minn.Stat. § 169.64, subd. 10(a), includes equipment or material that only partially covers a headlamp, tail lamp, or reflector, the police stop of Hoekstra's vehicle was based on reasonable, particularized suspicion, and the district court did not err by sustaining the revocation of Hoekstra's driver's license.

**Affirmed.**