*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2284**

Lowell Tietz,
Appellant,

vs.

United Rentals (North America), Inc.,
Respondent,

General Equipment Company, et al.,
Defendants.

**Filed July 21, 2014
Affirmed
Reilly, Judge**

Ramsey County District Court
File No. 62-CV-12-7014

Dominique J. Navarro, Larry B. Stevens, Larry B. Stevens & Associate, Roseville, Minnesota (for appellant)

Michael S. Ryan, Christian A. Brandt, Murnane Brandt, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant general contractor brought action against respondent equipment-supplier asserting claims for negligence, failure to warn, and res ipsa loquitur. The

district court granted respondent's motion for declaratory judgment against appellant, concluding that the rental agreement did not constitute a "building and construction contract" under chapter 337. We affirm.

### FACTS

The present action arises out of personal injuries sustained by appellant Lowell Tietz caused by equipment rented from respondent United Rentals (North America), Inc. Appellant was a carpenter working in residential construction and home improvement. In June 2009, appellant agreed to remove a deck from the back of his neighbor's house and rebuild a larger one in its place. Appellant was the general contractor on the job and had two employees working for him. On June 8, appellant entered into a rental agreement with respondent for a skid steer loader, a bucket, a skid steer auger power unit, and an 18-inch skid steer auger bit. The equipment was scheduled to be delivered to appellant's residence in Roseville on June 9 and returned on June 10.

The agreement contained a number of provisions related to indemnification and insurance as follows:

> INDEMNITY/HOLD HARMLESS. TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER AGREES TO INDEMNIFY, DEFEND AND HOLD UNITED HARMLESS FROM AND AGAINST ANY AND ALL LIABILITY, CLAIM, LOSS, DAMAGE OR COSTS (INCLUDING, BUT NOT LIMITED TO, ATTORNEYS' FEES, LOSS OF PROFIT, BUSINESS INTERRUPTION OR OTHER SPECIAL OR CONSEQUENTIAL DAMAGES, DAMAGES RELATING TO BODILY INJURY, DAMAGES RELATING TO WRONGFUL DEATH) CAUSED BY OR IN ANY WAY ARISING OUT OF OR RELATED TO THE OPERATION, USE, MAINTENANCE, INSTRUCTION, POSSESSION, TRANSPORTATION,

2

OWNERSHIP OR RENTAL OF THE EQUIPMENT, INCLUDING, BUT NOT LIMITED TO, WHENEVER SUCH LIABILITY, CLAIM, LOSS, DAMAGE OR COST IS FOUNDED, IN WHOLE OR IN PART, UPON ANY NEGLIGENT OR GROSSLY NEGLIGENT ACT OR OMISSION OF UNITED OR THE PROVISION OF ANY ALLEGEDLY DEFECTIVE PRODUCT BY UNITED. THIS INDEMNITY PROVISION APPLIES TO ANY CLAIMS ASSERTED AGAINST UNITED BASED UPON STRICT OR PRODUCT LIABILITY CAUSES OF ACTION, BREACH OF WARRANTY OR UNDER ANY OTHER THEORY OF LAW.

. . .

LIMITATION OF LIABILITY. In no event shall United be responsible to Customer or any other party for any loss, damage or injury caused by, resulting from or in any way connected with the Equipment, its operation or its use, United's failure to deliver the Equipment as required hereunder, or United's failure to repair or replace non-working Equipment. Customer acknowledges and assumes all risks inherent in the operation, use and possession of the Equipment from the time the Equipment is delivered to Customer until the Equipment is returned to United and will take all necessary precautions to protect all persons and property from injury or damage from the Equipment.

. . .

CUSTOMER'S INSURANCE COVERAGE. Customer agrees to maintain and carry, at its sole cost, adequate liability, physical damage, public liability, property damage and casualty insurance for the full replacement cost of the Equipment, including, but not limited to all risks of loss or damage covered by the standard extended coverage endorsement, to cover any damage or liability arising from the handling, transportation, maintenance, operation, possession or use of the Equipment during the entire Rental Period. When requested, Customer shall supply to United proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the equipment and naming United as loss payee and additional insured; such insurance

3

and evidence thereof to be in amounts and form satisfactory to United. The Certificate of Insurance and policy shall provide that United shall receive not less than 30 days' notice prior to any cancellation of the insurance required hereunder.

Appellant executed the agreement on June 8. On June 9, respondent's employee delivered the equipment to appellant in accordance with the terms of the agreement. The equipment had been loaded on a roll-back flatbed truck. The auger power unit was loaded toward the front of the flatbed, and the skid steer with bucket attached and auger bit were loaded toward the back of the flatbed. Respondent delivered the equipment to appellant's address and unloaded it alongside the curb in front of his house. The skid steer was unloaded first, with attached bucket and auger bit in the bucket. The auger power unit was unloaded last. In the process of unloading the auger power unit, the mounting plates on the front of the skid steer were maneuvered into position under the mounting brackets of the auger power unit and lifted off the flatbed. During this unloading process, respondent's employee stated that he did not push the two latch handles down or engage the pins in the slots on the back of the auger power unit because he did not know which attachment—the bucket or the auger power unit—appellant intended to use on the job first. The two latches were in the up position when respondent's employee left the job site. Appellant did not recall whether the latches were secured or not, but one of his employees testified that the latches were in the down (secured) position. Before beginning work, one of appellant's employees testified that he shook the equipment to ensure it was properly assembled and secured. The employee repeated this process again just before appellant was injured.

4

At the time of the delivery, an operator's manual for the skid steer was in the compartment immediately behind the operator's seat. A skid steer safety manual was also on the skid steer in a pocket compartment immediately to the right of the operator's seat. Both manuals provided instructions for the safe use of the attachment mounting system. Appellant did not remember receiving or reviewing these manuals. The auger power unit also carried a warning label that stated in bold letters: !DANGER—STAY 10 FEET FROM AUGER.

Appellant remained outside near respondent's truck and watched the unloading operation. Respondent demonstrated for appellant how to connect the hydraulic hoses of the auger power unit to the skid steer. Before leaving, respondent asked appellant to review the equipment and sign the rental agreement and the skid steer quality condition report. In the quality condition report, appellant acknowledged that he understood the correct operation and function of the controls and that he received adequate instruction to operate the equipment safely.

Appellant began to connect the auger bit to the unit. When the equipment was started, the auger came off the rig and struck appellant on the side of his face, neck, and scalp. As a result, appellant suffered injuries including vocal cord paralysis, nose deviation and nasal problems, left vertebral artery damage, eye and vision problems, facial nerve damage, and permanent scarring, among others.

Appellant initiated suit by serving a complaint against respondent, General Equipment Company, and Deere & Company, Inc., asserting in relevant part claims for negligence, failure to warn, and res ipsa loquitur. Respondent asserted a counterclaim

seeking declaratory relief for contractual indemnity and later filed a motion for summary judgment. The district court granted summary judgment on the res ipsa loquitur claim, denied summary judgment on the negligence and failure-to-warn claims, and granted the motion for declaratory judgment with respect to indemnification.

In its factual findings, the district court determined that the auger came off the unit because it was not properly attached. Appellant admitted that if he had conducted a proper investigation of the equipment before starting to work, the accident would not have happened. The district court found that appellant had not received training with respect to the operation of the equipment and did not know how to operate the equipment or secure the attachments. The district court further found that appellant was standing within ten feet of the auger at the time the accident occurred. The district court rejected appellant's argument that the rental agreement was a building and construction contract and determined that the rental agreement was "an agreement to rent equipment." The district court continued that, "[e]ven *if* it were deemed a building and construction contract, under Minn. Stat. Sec. 337.05, [appellant] must still indemnify [respondent] based upon the indemnification provision in the rental contract." The district court concluded its analysis as follows: "Under common law, then, [appellant] is obligated to indemnify [respondent] because: (1) The agreement is a valid contract; (2) The indemnification provision applies to the claims alleged; and (3) The agreement is not against public policy." This interlocutory appeal of the declaratory judgment portion of the order followed.

6

**D E C I S I O N**

> Rule 56 of the Minnesota Rules of Civil Procedure is designed to implement the stated purpose of the rules—securing a just, speedy, and inexpensive determination of an action—by allowing a court to dispose of an action on the merits if there is no genuine dispute regarding the material facts and, a party is entitled to judgment under the law applicable to such facts.

*DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997). Accordingly, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal, the reviewing court applies a de novo standard of review to a grant of summary judgment. *Kratzer v. Welsh Cos., LLC*, 771 N.W.2d 14, 18 (Minn. 2009). The evidence is viewed in the light most favorable to the party against whom judgment was granted. *Id.* "The judgment will be affirmed, however, if no genuine issues of material fact exist and if the court below properly applied the law." *Id.* Even if an appellate court disagrees with the district court's analysis of some issues, "summary judgment will be affirmed if it can be sustained on any grounds." *Allianz Ins. Co. v. PM Servs. of Eden Prairie, Inc.*, 691 N.W.2d 79, 82-83 (Minn. App. 2005).

Indemnification provisions are construed narrowly and are generally not favored under Minnesota law. *See Nat'l Hydro Sys., a Div. of McNish Corp. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 694 (Minn. 1995) (holding that, absent certain exceptions, "[a]greements seeking to indemnify the indemnitee for losses occasioned by its own negligence are not favored by the law and are not construed in favor of indemnification").

7

Indeed, "[a]n indemnification agreement contained in, or executed in connection with, a building and construction contract" is generally unenforceable. Minn. Stat. § 337.02 (2012). Minnesota law recognizes an exception to this rule to the extent that "the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegates." *Id*.

Appellant argues that because the rental agreement was executed in connection with a building and construction contract, the indemnification provision contained therein is statutorily unenforceable. The district court rejected appellant's argument, concluding:

> It is clear that is not the case. A building and construction contract, as defined by statute is a contract for the design, construction, alteration, improvement, repair or maintenance of real property, highways, roads or bridges. This was nothing of the sort: it was an agreement to rent equipment.

Determining whether the parties' agreement for the rental of equipment arose "in connection with" a business and construction contract under chapter 337 ultimately turns on a question of statutory interpretation. Statutory interpretation presents a question of law reviewed on a de novo basis. *Hoekstra v. Comm'r of Pub. Safety*, 839 N.W.2d 536, 540 (Minn. App. 2013). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012). The plain language of a statute is the "touchstone" of statutory interpretation. *ILHC of Eagan, LLC v. Cnty. of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005). Thus, where the statutory language is "clear, explicit, unambiguous, and free from obscurity, courts are bound to expound the language according to the common sense and ordinary meaning of

8

the words." *Krueger v. Zeman Const. Co.*, 758 N.W.2d 881, 885 (Minn. App. 2008), *aff'd*, 781 N.W.2d 858 (Minn. 2010) (citations omitted); Minn. Stat. § 645.08(1) ("[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage[.]"). "When a statute's meaning is plain from its language as applied to the facts of the particular case, a judicial construction is not necessary." *ILHC of Eagan, LLC*, 693 N.W.2d at 419. When possible, a law should be construed "to give effect to all its provisions," Minn. Stat. § 645.16 (2012), and "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *ILHC of Eagan, LLC*, 693 N.W.2d at 419.

The Minnesota statute invoked in this case defines a "building and construction contract" as:

> a contract for the design, construction, alteration, improvement, repair or maintenance of real property, highways, roads or bridges. The term does not include contracts for the maintenance or repair of machinery, equipment or other such devices used as part of a manufacturing, converting or other production process, including electric, gas, steam, and telephone utility equipment used for production, transmission, or distribution purposes.

Minn. Stat. § 337.01, subd. 2 (2012).

The court is presented with two separate agreements in this case: an oral contract between a nonparty homeowner and appellant for the construction of a residential deck, and a written contract between appellant and respondent for the rental of equipment. Appellant contends that the rental of the skid loader, auger, and related equipment was done "in connection with" the oral building contract and therefore qualifies as a building

9

and construction contract under a broad reading of the statute. However, appellant has not cited to any persuasive authority to support this position. Chapter 337 generally applies to construction-industry projects. *Target Corp. v. All Jersey Janitorial Serv., Inc*., 916 F. Supp. 2d 909, 913 (D. Minn. 2013). Indeed, appellate-court analysis of section 337.02 has mainly arisen in contracts between general contractors, subcontractors, and their employees. *See, e.g.*, *Katzner v. Kelleher Constr*., 545 N.W.2d 378 (Minn. 1996) (analyzing Minn. Stat. §§ 337.02, 337.05 in context of construction contract between designer/builder of construction project and its contractors); *Van Vickle v. C. W. Scheurer & Sons, Inc*., 556 N.W.2d 238 (Minn. App. 1996) (performing chapter 337 analysis on subcontract agreement between general contractor and subcontractor for expansion and renovation of university library); *Holmes v. Watson-Forsberg Co*., 488 N.W.2d 473 (Minn. 1992) (involving injuries sustained by subcontractor's employee while engaged in roofing activity at construction site).

Appellant argues that the equipment rental contract and its attendant indemnity provision was executed "in connection with" a building and construction contract. Appellant's argument is strained. Appellant does not cite to any binding Minnesota caselaw or statutory authority extending "building and construction" contracts to encompass an agreement between a party to a construction contract and a remote nonparty for the rental of equipment. The legislature could have included rental equipment in its definition of a building and construction contract if that had been its intent. *See* Minn. Stat. § 337.01, subd. 2. As drafted, however, the statute does not apply under these circumstances and this court "cannot add language that is not present in the

statute or supply what the legislature purposely omits or inadvertently overlooks." *Semler v. Klang*, 743 N.W.2d 273, 280 (Minn. App. 2007), *review denied* (Minn. Feb. 19, 2008). We decline to broaden existing law to the extent appellant suggests. The district court did not err in determining that the agreement for rental equipment was not a "building and construction contract" as that term is defined by Minn. Stat. § 337.01.

**Affirmed**.