Raymond L. SEMLER, Appellant,

v.

Erick KLANG, Crow Wing County Sheriff, Respondent,

Rick Koop, Chief Investigator for Crosby Police Department, et al., Respondents.

No. A06–1852.

Court of Appeals of Minnesota.

Dec. 18, 2007.

Review Denied Feb. 19, 2008.

Raymond L. Semler, Moose Lake, MN, pro se.

Kristy A. Saum, James R. Andreen, Erstad & Riemer, P.A., Minneapolis, MN, for respondent Erick Klang.

Jon K. Iverson, Jason M. Hiveley, Iverson Reuvers, LLC, Bloomington, MN, for respondents Rick Koop, John A. Bolduc, and Kyle Huber.

Considered and decided by TOUSSAINT, Chief Judge; LANSING, Judge; and HUSPENI, Judge.

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

HUSPENI, Judge.*

Respondents Kyle Huber (the Staples police chief), Rick Koop (the Crosby police department chief investigator), John Bolduc (the Brainerd police chief), and Erick Klang (the Crow Wing county sheriff), acting under Minn.Stat. § 244.052 (2000) and Minn.Stat. § 244.052 (2002), notified communities about the presence of appellant Raymond Semler, a risk level II sex offender. Appellant brought this action against them, alleging that the community notifications violated his rights and constituted slander and defamation. The claims against Huber, Koop, and Bolduc were dismissed on the ground of official immunity, and the claims against Klang were dismissed on the grounds of improper service and expiration of the statute of limitations. Appellant challenges the dismissals.

## FACTS

Appellant Raymond Semler was born in January 1976. In 1989, he assaulted a 14–year–old girl, but no conviction resulted. In 1993, he assaulted and raped a 17–year–old girl, but again, no conviction resulted. In 1997, he was convicted of criminal sexual conduct in the fourth degree and of kidnapping after assaulting an adult woman. He was placed on probation. In July 2000, his probation was revoked and he was confined to the correctional facility at Moose Lake.

Prior to appellant's release, the end-of-confinement review committee (ECRC) categorized him as a risk level II sex offender. Appellant's risk assessment report said he "has a definite pattern of harassing females" and that "the juvenile

Minn. Const. art. VI, § 10.

investigations occurred but there were no charges or convictions."

Appellant was released on December 31, 2001. In January 2002, the Deerwood Police Department notified the public of appellant's release. The notice stated that appellant "has a history of forced sexual contact with females (ranging in age from 14 to adult). The contact includes fondling and penetration. The offender uses physical force to gain compliance. The offender was unknown to the victims." The Deerwood police department again provided this notice to the public in December 2002, when appellant was released after having been incarcerated following the August 2002 revocation of his probation. The Crow Wing county sheriff's department provided the same notice to the public in June 2003, when appellant was released after having been incarcerated in February 2003, following another probation revocation. The Brainerd police department provided the notice to the public when appellant changed his address in July 2003, and the Staples police department provided it when he again changed his address in August 2003.[1]

In November 2005, acting pro se, appellant brought this action against respondents, alleging that the community notification violated his rights and constituted slander and defamation.

The district court dismissed appellant's claims against Huber, Koop, and Bolduc after determining that they "erred in disclosing information 'inconsistent with offender's conviction history'" under Minn. Stat. § 244.052 subd. 7(c) (2006), but that they were entitled to official immunity be-

cause they "did not engage in willful or malicious disclosures to injure [appellant's] reputation," and "disclosed that information, which in their discretion, allowed them to protect the public." The district court subsequently dismissed appellant's claims against Klang after determining that appellant had failed to serve Klang, and that the statute of limitations had run on all claims made by appellant against Klang. Appellant now challenges dismissal of all claims.

## ISSUES

1. Does Minn.Stat. § 244.052, subd. 7(c) (2006), preclude official immunity for officers who disclose information about a sex offender that is not "consistent with the offender's conviction history?"

2. Does Minn.Stat. § 541.06 (2006) apply to police officers?

3. Does unacknowledged service by mail confer jurisdiction?

4. Does Minn.Stat. § 541.06 preclude an action against a sheriff if more than three years have passed since the act complained of?

## ANALYSIS

### 1. Official immunity of respondents Huber, Koop, and Bolduc

■ The application of official immunity is a question of law, which we review de novo. *Thompson v. City of Minneapolis,* 707 N.W.2d 669, 673 (Minn.2006).

Appellant was a risk level II sex offender. He alleges that Koop's offense occurred prior to December 31, 2001, and that Bolduc's and Huber's offenses oc-

---

1. Appellant has since been indeterminately committed as a sexually dangerous person (SDP). *See In re Civil Commitment of Semler,* No. A06–2213, 2007 WL 969081, at *3 (Minn. App. Apr.3, 2007) (concluding that appellant "engaged in a course of harmful sexual con-

duct" and upholding his commitment as SDP), *review denied* (Minn. May 30, 2007). We note that appellant's motion to strike references to *Semler* from the record was denied in this court's order dated June 8, 2007.

curred in July 2003 and August 2003, respectively. At these times, disclosure to the public of information on sex offenders of various risk levels was governed by Minn.Stat. § 244.052 (2000) and Minn.Stat. § 244.052 (2002).[2] Understanding the relevant subdivisions in their context requires a comprehensive review of the statute.

Subdivision 1(2) defines "law enforcement agency" as "the law enforcement agency having primary jurisdiction over the location where the offender expects to reside upon release." Subdivision 2 directs the commissioner of corrections to "develop a risk assessment scale" that "specifies the risk level to which offenders with various risk assessment scores shall be assigned."

Subdivision 3(a) provides for the establishment of an "end-of-confinement review committee" at each state correctional facility. Subdivision 3(c) provides that the committee shall have access to an offender's private medical data, private and confidential court services data, private and confidential corrections data, and private criminal history data, and also that data collected and maintained by the committee may not be disclosed outside the committee. Subdivision 3(e) provides that a sex offenders whose risk assessment score indicates a low risk of reoffense shall be assigned to level I; those whose score indicates a moderate risk shall be assigned to level II, and those whose score indicates a high risk shall be assigned to level III. Subdivision 3(f) provides that, before an offender's release, the committee "shall prepare a risk assessment report[3] which specifies the risk level to which the offend-

er has been assigned and the reasons underlying the committee's risk assessment decision" and "shall give the report to the offender and to the law enforcement agency at least 60 days before an offender is released from confinement."

Subdivision 4 provides in relevant part:

(a) The law enforcement agency in the area where the sex offender resides, expects to reside, is employed, or is regularly found, shall disclose to the public any information regarding the offender contained in [the risk assessment] report ... that is relevant and necessary to protect the public and to counteract the offender's dangerousness, consistent with the guidelines in paragraph (b). The extent of the information disclosed and the community to whom disclosure is made must relate to the level of danger posed by the offender, to the offender's pattern of offending behavior, and to the need of community members for information to enhance their individual and collective safety.

(b) The law enforcement agency shall employ the following guidelines in determining the scope of disclosure made under this subdivision:

(1) if the offender is assigned to risk level I, the agency may maintain information regarding the offender within the agency and may disclose it to other law enforcement agencies . . . . ;

(2) if the offender is assigned to risk level II, the agency also may disclose the information to agencies and groups that the offender is likely to encounter for the purpose of securing those institu-

---

**2.** These statutes are identical in all parts relevant to this matter.

**3.** After describing the offense for which appellant was found guilty, the risk assessment report also describes several incidents that did not result in conviction, including one in

which appellant "was investigated for grabbing a 14–year old female and dragging her across a road toward a house." Appellant does not claim that the committee included any improper data in the risk assessment report.

tions and protecting individuals in their care while they are on or near the premises of the institution. . . . The agency also may disclose the information to individuals the agency believes are likely to be victimized by the offender. The agency's belief shall be based on the offender's pattern of offending or victim preference as documented in the information provided by the department of corrections or human services;

(3) if the offender is assigned to risk level III, the agency shall disclose the information to the persons and entities described in clauses (1) and (2) and to other members of the community whom the offender is likely to encounter, unless the law enforcement agency determines that public safety would be compromised by the disclosure or that a more limited disclosure is necessary to protect the identity of the victim.

Subdivision 4(c) defines those an offender is "likely to encounter" as those in, or in close proximity to, a location where the offender lives or is employed or which the offender is likely to visit on a regular basis. Subdivision 4(d) provides that a law enforcement agency or official who discloses information "shall make a good faith effort to make the notification within 14 days of receipt of a confirmed address." Subdivision 5 provides that the law enforcement agency where an offender plans to reside is to be given all relevant information concerning the offender, including information on risk factors in the offender's history and the risk level to which the offender was assigned, by the appropriate department (corrections or human services) within five days of the department's receipt of the offender's approved release plan.

Finally, subdivision 7 provides that no criminal liability will attach for either disclosing or failing to disclose information as permitted by this section, that no civil liability will attach for failing to disclose such information, and that no civil liability will attach for disclosing "information that is consistent with the offender's conviction history." Subdivision 7 also provides that this immunity does not extend to disclosure of information relating to conduct for which the offender was not convicted.

■■■ The district court found that Huber, Koop, and Bolduc had disclosed information relating to conduct for which appellant was not convicted, and we agree that the statutory immunity provided by subdivision 7 is not available to these respondents. But we also agree with the district court that official immunity is available to them.

■■ "A public official is not protected by [official] immunity in the performance of his duties when he fails to perform a ministerial act, or when his performance of a discretionary act is willful or malicious." *Thompson*, 707 N.W.2d at 673. Thus, the first question before us is whether the conduct of Huber, Koop, and Bolduc was ministerial or discretionary. If it was discretionary, the second question becomes whether they acted willfully or maliciously.

■■■ A discretionary act requires the exercise of individual judgment in carrying out duties, while a ministerial act involves merely the execution of a specific duty arising from fixed and designated facts. *Id.* The language of Minn.Stat. § 244.052 both presupposes and requires that law enforcement officials use their individual judgment. Subdivision 4(b) provides "guidelines" to assist law enforcement officials "in determining the scope of disclosure." Subdivision 4(b)(1) and (2) provide that an agency "may" disclose information about risk level I and risk level II offenders, while subdivision 4(b)(3) provides that the agency "shall" disclose information

"unless [it] determines that public safety would be compromised" by the disclosure. In construing statutes, "may" is permissive and "shall" is mandatory. Minn.Stat. § 645.44, subds. 15, 16 (2006). At no point does Minn.Stat. § 244.052 either mandate or forbid disclosure without reference to the disclosers' judgment as to what to disclose and to whom to disclose it. Thus, disclosure of information under Minn.Stat. § 244.052 is a discretionary act.

The subdivision 7 provision of immunity from civil liability for all failures to disclose but only for disclosures of information consistent with an offender's conviction history is consistent with the requirement that even discretionary acts must be performed without malice for official immunity to attach. *See Thompson*, 707 N.W.2d at 673 (public official not protected by official immunity when performance of discretionary act is willful or malicious). While a public official's decision to disclose information other than what is consistent with an offender's conviction history could be willful or malicious, and would therefore not be entitled to official immunity, clearly such is not demonstrated here.

■ Mere allegations of malice are not sufficient to support a finding of malice, as such a finding must be based on "specific facts evidencing bad faith." *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. App.1990), *review denied* (Minn. Feb. 28, 1990). Nothing in the record indicates that the motive of Huber, Koop, and Bolduc were the bad-faith deprecation of appellant rather than their attempt to follow statutory mandates and guidelines and to

protect individuals in the areas where appellant was residing. The notice about appellant referred to forced sexual conduct with females "ranging in age from 14 to adult" and appellant's only conviction resulted from an incident with an adult. But appellant's risk-assessment report said he "has a definite pattern of harassing females" and that "the juvenile investigations occurred but there were no charges or convictions." Minn.Stat. § 244.052, subd 4(a), provides for disclosure of information in the risk-assessment report. Minn.Stat. § 244.052, subd. 4(b)(2), provides that, for risk level II offenders, "[t]he agency also may disclose the information to individuals the agency believes are likely to be victimized by the offender. The agency's belief shall be based on the offender's pattern of offending or victim preference as documented in the information provided by the department of corrections or human services."

Although the disclosures of Huber, Koop, and Bolduc may have deprived them of the protections of subdivision 7, the district court properly continued its analysis by considering the application of official immunity to the challenged actions. We conclude, as did the district court, that Huber, Koop, and Bolduc acted in a manner intended to comply with the statute, and that they were entitled to official immunity.[4]

### 2. Statute of limitations for Huber, Koop, and Bolduc[5]

■ In November 2005, appellant filed his complaint alleging that Koop committed slander and defamation prior to

---

4. Because we conclude that Huber, Koop, and Bolduc were entitled to official immunity, we do not address their argument that they are entitled to absolute immunity.

5. This issue was presented to, but not addressed by the district court, which dismissed the claims against Huber, Koop, and Bolduc on the ground of official immunity. We address it in the interest of completeness. *See* Minn. R. Civ.App. P. 103.04.

December 31, 2001, that Bolduc did so in July 2003, and that Huber did so in August 2003. Minn.Stat. § 541.07(1) (2004) provides that actions for these torts shall be commenced within two years. Appellant relies on Minn.Stat. § 541.06 (2004), which provides that actions against "a sheriff, coroner, or constable for any act done in an official capacity" shall be commenced within three years. But Minn.Stat. § 541.06 does not mention "police officer," and "this court cannot add language that is not present in the statute or supply what the legislature purposely omits or inadvertently overlooks." *Roer v. Dunham*, 682 N.W.2d 179, 181 (Minn.App.2004).

Appellant argues that "constable" means "police officer" but offers no support for this argument. Moreover, the legislature's practice has been to use both terms. *See, e.g.,* Minn.Stat. § 169A.03, subd. 18 (2004) (defining "peace officer" to include both "a constable" and a "police officer of any municipality"); Minn.Stat. § 631.04 (2004) ("A police officer, constable, sheriff, or other officer in charge of a court. . . ."). Thus, the terms are not synonymous. The three-year limitation of Minn.Stat. § 541.06 (2004) does not apply to police officers and appellant's claims are barred by the two-year limitation of Minn.Stat. § 541.07(1).[6]

### 3. Service on Klang

■■■ This court reviews de novo whether service of process was proper. *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 814 (Minn.App.1992), *review denied* (Minn. July 16, 1992). Appellant chose to serve Klang by mail, which is governed by Minn. R. Civ. P. 4.05:

> In any action service may be made by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgement conforming substantially to Form 22 and a return envelope, postage prepaid, addressed to the sender. If acknowledgment of service under this rule is not received by the sender within the time defendant is required by these rules to serve an answer, service shall be ineffectual.

It is undisputed that appellant mailed Klang a copy of the complaint and other documents twice—once on October 13, 2005 and once on June 15, 2006—and that Klang never acknowledged service. Service, therefore, was ineffective, and the district court properly dismissed the claims against Klang because it had no jurisdiction over him. *See Mercer v. Andersen,* 715 N.W.2d 114, 118 (Minn.App. 2006) ("Ineffective service of a defendant results in a lack of personal jurisdiction.").

### 4. Statute of limitations for Klang

■■■ The construction and application of a statute of limitations are questions of law, which this court reviews de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998).

■■■ Minn.Stat. § 541.06 provides that an action against a sheriff for an act performed in an official capacity must be brought within three years. Appellant claimed that the sheriff's actions of which he complained occurred on January 7, 2002, and June 23, 2003. The district court determined on September 22, 2006, that neither of appellant's attempts to serve Klang had been effective. Because

**6.** Minn.Stat. § 541.06 (2006) has been revised to impose the three-year limitation on actions "against a sheriff or coroner." References to constables have been deleted from Minnesota statutes. *See* 2005 Minn. Laws ch. 10, art. 2, § 4, subd. 2, at 137 (directing revisor to eliminate references to the term "constable").

more than three years had elapsed since the acts complained of occurred, the district court did not err in dismissing with prejudice the claims against Klang on the ground that the statute of limitations had run.

## DECISION

Because Huber, Koop, and Bolduc were entitled to official immunity for their good-faith notification of communities about appellant, and because the relevant statute of limitations had run when appellant brought his claims against them, we affirm the dismissal of those claims. Because Klang was never properly served and the relevant statute of limitations had run, we affirm the dismissal of the claims against him.

**Affirmed.**