Mackenzie Bailey KUTSCHEID,
Appellant,

v.

EMERALD SQUARE PROPERTIES,
INC., et al., Respondents.

No. A08–1620.

Court of Appeals of Minnesota.

Aug. 11, 2009.

Drew P. Schaffer, Minneapolis, MN, for appellant.

Kenneth R. Hertz, Hertz Law Offices, P.A., MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; JOHNSON, Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.*

Appellant brought this rent-escrow action against respondents, alleging that respondents violated Minn.Stat. § 504B.215, subd. 2a(1), which requires notice to prospective tenants of the total utility cost for a single-metered residential apartment building for each month of the most recent calendar year when the landlord bills for utility charges separate from the rent. In this appeal from a judgment for respondents, appellant argues that respondents did not provide her with the information required by Minn.Stat. § 504B.215, subd. 2a, before she leased the property, and, thus, she is entitled to damages and attorney fees under Minn.Stat. § 504B.221(a). Because respondents did not provide appellant with the statutorily required information before she leased the property, we reverse and remand.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## FACTS

In the fall of 2007, appellant Mackenzie Bailey Kutscheid considered leasing an apartment in a 21–unit apartment building in Minneapolis. Respondent Emerald Square Properties, Inc. is the property owner, and respondent JAS Apartments, Inc. is the management company for the building. The apartment building has single-utility meters measuring the building-wide usage and consumption of gas for heating, gas for cooking and hot water, and water/sewer service.

Kutscheid and her mother spoke to Martin Kretzman, respondents' leasing agent, about shared-meter utility billing and the cost of utilities. Kutscheid testified that Kretzman said that Kutscheid's utilities cost would be about $60 to $80 per month during the winter; Kretzman testified that he told Kutscheid that $60 to $80 was the annual monthly average utilities cost.

On November 15, 2007, Kutscheid and respondents entered into a lease agreement and utilities addendum. The utilities addendum provides that the building's gas bill will be allocated among apartment units based on the percentage that the square footage of each apartment represents of all rentable square footage of the building and that the water and sewer bill will be allocated equally among the apartment units in the building. The addendum also states: "Upon Tenant's request, Landlord will provide a copy of the actual utility bill for the property. In addition, Landlord will make available an accounting of the utility bill prorations."

Kutscheid paid the following amounts for her share of the apartment building's gas and sewer and water bills during the winter of 2007–08: $40.33 for November

Minn. Const. art. VI, § 10.

15–30, 2007; $168.18 for December 2007; $171.39 for January 2008; and $170.67 for February 2008. In February 2008, Kutscheid contacted Angela Conte, the asset manager for JAS Apartments, to ask about what Kutscheid perceived to be the high cost of utilities. Kutscheid testified that Conte responded that it had been a very cold winter. The next month, Kutscheid contacted Conte again and asked to see the billing records for the gas and water utilities. Conte provided Kutscheid with the bills and documents showing the cost allocation to each unit in the building for 2006, 2007, and for the first three months of 2008.

During all of 2006, the average monthly allocation of the gas and water bills to units in the building was $77.05 and to Kutscheid's unit was $81.16. During 2007, the average monthly allocation to units was $76.33 and to Kutscheid's unit was $80.27.

Kutscheid brought this rent-escrow action against respondents, alleging that they violated Minn.Stat. § 504B.215, subd. 2a(1), and also claiming that respondents misrepresented the amount of utility costs during winter months. The case was tried to a district-court referee, who found that respondents complied with the requirements of Minn.Stat. § 504B.215, subd. 2a. On Kutscheid's request for review, the district court affirmed the referee's decision. This appeal followed.

### ISSUES

I. Did the district court err by concluding that respondents complied with Minn. Stat. § 504B.215, subd. 2a(1)?

II. Is Kutscheid entitled to damages under Minn.Stat. § 504B.221(a)?

### ANALYSIS

#### I.

 The construction of a statute is a legal issue, which this court reviews de novo. *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695*, 662 N.W.2d 139, 143 (Minn.2003). When interpreting a statute, an appellate court first determines "whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). The object of statutory interpretation is to ascertain and effectuate the legislature's intent. Minn.Stat. § 645.16 (2008). If that intent is clear from plain and unambiguous language, "statutory construction is neither necessary nor permitted," and an appellate court will apply the plain meaning of the statute. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001).

Minn.Stat. § 504B.215, subd. 2a, provides:

If the landlord of a single-metered residential building bills for utility charges separate from the rent, the following conditions apply:

(1) prospective tenants must be provided notice of the total utility cost for the building for each month of the most recent calendar year; and

(2) an equitable method of apportionment and the frequency of billing by the landlord must be predetermined and put in writing for all leases.

The lease must contain a provision that, upon a tenant's request, a landlord must provide a copy of the actual utility bill for the building along with each apportioned utility bill. Upon a tenant's request, a landlord must also provide past copies of actual utility bills for any period of the tenancy for which the tenant received an apportioned utility bill.

Past copies of utility bills must be provided for the preceding two years or from the time the current landlord acquired the building, whichever is most recent.

■ Kutscheid challenges the district court's finding that Minn.Stat. § 504B.215, subd. 2a(1), "does not state when the 'notice' has to be given." The statute requires that notice be given to "prospective tenants." *Id.* Applying the plain meaning of the term prospective, the statute requires that notice be given before a person becomes a tenant. *See The American Heritage Dictionary of the English Language* 1408 (4th ed.2000) (defining "prospective" as "likely to become or be"). Accordingly, the information that Conte provided to Kutscheid after Kutscheid became a tenant is not relevant in determining whether respondents satisfied the statutory notice requirement.

■ The question, therefore, is whether Kretzman's disclosure before Kutscheid became a tenant was sufficient. Kutscheid argues that the district court erred by finding that Kretzman told her that the utility bills for Kutscheid's apartment averaged between $60 and $80 per month over the course of a year. "On appeal, a [district] court's findings of fact are given great deference, and shall not be set aside unless clearly erroneous.... If there is reasonable evidence to support the [district] court's findings of fact," an appellate court will not disturb those findings. *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999) (citation omitted). It is not this court's role "to reconcile conflicting evidence." *Id.*

Kretzman testified that he told Kutscheid that $60 to $80 per month was the average monthly cost of utilities for Kutscheid's apartment over the course of a year. His testimony is supported by records showing the average monthly shared

utility cost for years 2006 and 2007 and by Conte's testimony that leasing agents were instructed to give the average monthly cost for a building unit for the year when showing an apartment. The district court's finding that Kretzman disclosed the average monthly utility cost on an annual basis is supported by reasonable evidence and is not clearly erroneous.

The parties dispute whether the disclosure of the average monthly utility cost for a single unit over the course of a year satisfied the statutory notice requirement. Minn.Stat. § 504B.215, subd. 2a, requires that prospective tenants "be provided notice of the total utility cost for the building for each month of the most recent calendar year." Respondents concede that Kutscheid was not provided with the total utility cost for the building but argue that the disclosure of the average monthly cost for the unit she was looking at satisfied the purpose of the notice requirement. But when statutory language is unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16. The disclosure of the average monthly cost for a unit over the course of a year was insufficient. The statute requires disclosure of the total utility cost for the building for each month of the most recent calendar year.

## II.

For the violation of Minn.Stat. § 504B.215, subd. 2a, discussed above, Kutscheid requests damages under section 504B.221(a), which provides that:

if a landlord, an agent, or other person acting under the landlord's direction or control, interrupts or causes the interruption of electricity, heat, gas, or water services to the tenant, the tenant may recover from the landlord treble damages or $500, whichever is greater, and reasonable attorney's fees. It is a defense to any action brought under this section that the interruption was the

result of the deliberate or negligent act or omission of a tenant or anyone acting under the direction or control of the tenant.

Minn.Stat. § 504B.215, subd. 2, provides that:

> the landlord of a single-metered residential building shall be the bill payer responsible, and shall be the customer of record contracting with the utility for utility services. The landlord must advise the utility provider that the utility services apply to a single-metered residential building. A failure by the landlord to comply with this subdivision is a violation of . . . 504B.221.

■ Nothing in the language of Minn. Stat. § 504B.215 or Minn.Stat. § 504B.221(a) supports Kutscheid's argument that Minn.Stat. § 504B.221(a) applies to a violation of Minn.Stat. § 504B.215, subd. 2a. "[T]his court cannot add language that is not present in the statute or supply what the legislature purposely omits or inadvertently overlooks." *Semler v. Klang*, 743 N.W.2d 273, 280 (Minn.App. 2007) (quotation omitted), *review denied* (Minn. Feb. 19, 2008). We conclude, therefore, that Minn.Stat. § 504B.221(a) does not apply to a violation of Minn.Stat. § 504B.215, subd. 2a.

### DECISION

The district court erred by determining that respondents' disclosure to Kutscheid of the average monthly utilities cost for a single unit over the course of a year satisfied the requirements of Minn.Stat. § 504B.215, subd. 2a. We reverse and remand for a determination of what damages, if any, Kutscheid suffered as a result of the statutory violation.

**Reversed and remanded.**